UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARTIN GWYNN,

    Plaintiff,

v.                                  CASE NO.: 8:09-cv-2093-T-23TGW

RABCO LEASING, INC., BRUCE D.
RABON, ALTON CATES, and VIRGINIA
HUNTER,

    Defendants.
_____/

## **ORDER**

The plaintiff sues "on his own behalf and on behalf of Hurricane Pass Traders, Inc.," for fraud, trademark infringement, copyright infringement, and tortious interference with a business relationship. The defendants move (Docs. 24, 26) to dismiss the amended complaint (Doc. 20) and the plaintiff responds (Docs. 28, 29) in opposition. Additionally, the plaintiff moves (Doc. 31) to dismiss the counterclaim (Doc. 30) by Rabco Leasing, Inc.

<u>Allegations of the Complaint</u>

In 1998, the plaintiff, the defendant Bruce Rabon ("Rabon"), and Kathy Zimmerman ("Zimmerman") formed the Hurricane Pass Traders general partnership (the "partnership"). The partnership sold t-shirts through a retail company known as William Short Clothiers ("WSC"), which employed both the plaintiff and Rabon. After WSC closed WSC's retail outlets, WSC and the partnership collaborated to sell t-shirts

and other retail items online.  WSC, the plaintiff, and Rabon established a web site, http://www.hurricanepasstraders.com (the "web site").[1]  In 2002, the plaintiff and Rabon formed a corporation under Florida law with the name Hurricane Pass Traders, Inc. ("Hurricane Pass").  The plaintiff and Rabon became Hurricane Pass's co-owners, initial board members, and principle officers.  Hurricane Pass assumed the partnership's role in the online business with WSC.  Contemporaneously, the defendant Rabco Leasing, Inc., ("Rabco Leasing") acquired WSC.  For approximately four years thereafter, Hurricane Pass and Rabco Leasing collaborated in online sales, which generated an annual gross revenue of between $500,000 and a million dollars.  The plaintiff earned a salary, which was paid by Rabco Leasing, plus ten percent of the profits generated from online sales.

In June, 2009, the relationship between the plaintiff and Rabon "became acrimonious, both professionally and personally."  (Doc. 1, ¶ 41)  In July, 2009, Rabco Leasing terminated the plaintiff's employment.  To settle a dispute over both the web site and money owed to the plaintiff, the plaintiff and Rabco Leasing entered a "settlement agreement and general release" (the "settlement agreement"), which released Rabco Leasing and any agent of Rabco Leasing from any claim or potential claim of the plaintiff.[2]

---

[1] Around the same time, Rabon and the plaintiff purchased Zimmerman's interest in the partnership.

[2] (Doc. 1, ¶ 45) Although the plaintiff allegedly signed "under duress," the plaintiff was represented by counsel during the meeting at which the plaintiff signed the settlement agreement.  (Doc. 1, ¶ 45)

- 2 -

Following the plaintiff's termination from Rabco Leasing, the plaintiff sought—pursuant to Section 607.1602, Florida Statutes[3]—to inspect Hurricane Pass's corporate records.  The defendants Rabon, Alton Cates, and Virginia Hunter maintained Hurricane Pass's accounting records and provided some records in response to the plaintiff's demand.  Approximately two weeks later, Rabco Leasing and Rabon filed against the plaintiff a criminal complaint alleging "theft and embezzlement of trade secrets." (Doc. 1, ¶ 50)  After responding to the criminal complaint, the plaintiff again demanded to inspect Hurricane Pass's records.  Upon the plaintiff's second inspection, the plaintiff discovered several "accounting anomalies" including (1) a "significant and material" discrepancy between the "accounts payable" and "accounts receivable" and (2) inexplicably missing inventory.

The plaintiff initiated this action on October 15, 2009, (Doc. 1) and filed an amended complaint on November 18, 2009 (Doc. 20).  In the amended complaint, the plaintiff alleges fraud, trademark infringement, copyright infringement, and tortious interference with a business relationship.  In moving to dismiss, the defendants argue (1) that the settlement agreement (Doc. 24-1)[4] bars this action and (2) that, in the

---

[3] Section 607.1602, Florida Statutes, grants the shareholder of a corporation the right to demand access, during regular business hours, to a corporation's books and records for inspection and copying.

[4] Generally, only the complaint and any document attached to the complaint are considered on a motion to dismiss. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997). However, a document (such as the settlement agreement) which is attached to a motion to dismiss, may be considered "without converting the motion into one for summary judgment if the . . . document is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1271, 1276 (11th Cir. 2005).  A document is "undisputed" if no party challenges the document's authenticity.  400 F.3d at 1276.  A document is "central to the plaintiff's claim" if "the plaintiff would have had to offer the document in order to prove [the plaintiff's] case." Fin. Serv. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284-85 (11th Cir. 2007).  In this action, no party disputes the authenticity of the settlement agreement and the settlement agreement is central the plaintiff's case.

- 3 -

alternative, the complaint fails to state a claim. In response, the plaintiff asserts that the settlement agreement bars no part of this action (1) because the action is a shareholder derivative action on behalf of Hurricane Pass and (2) because Hurricane Pass is not a party to the settlement agreement.

<u>Discussion</u>

*1. The Settlement Agreement*

The defendants argue (Docs. 24, 26) that the settlement agreement bars this action. In response, the plaintiff argues (1) that the only claim the plaintiff brings on behalf of himself—and not as a shareholder of Hurricane Pass—is an intentional tort,[5] (2) that "under Florida law general releases of this kind do not apply to intentional torts as a matter of public policy," and (3) that the settlement agreement affects no claim brought on behalf of Hurricane Pass because Hurricane Pass is not a party to the settlement agreement.

The plaintiff cites <u>Fuentes v. Owen</u>, 310 So. 2d 458 (Fla. 3d DCA 1975), in support of the plaintiff's argument that a general release cannot exempt a party from liability for future intentional conduct. <u>Fuentes</u> addresses the effect of an exculpatory clause in a lease. <u>Fuentes</u> finds an exculpatory clause enforceable to the extent that the clause releases the landlord and any agent of the landlord from future liability for negligence. As a matter of public policy, however, <u>Fuentes</u> finds that even if an exculpatory clause purports to release the landlord from future liability for an intentional tort "such an attempt . . . is generally declared void." <u>See</u> also <u>Farese v. Scherer</u>, 297

---

[5] The plaintiff's "Third Cause of Action" is "Damages for Interference With A Contractual Relationship," which appears to allege a claim under Florida law for tortious interference.

- 4 -

Fed. Appx. 923, 926 (11th Cir. 2008) (finding that "Florida law allows releases of liability for future negligent conduct, if the release explicitly states that [the release] covers future conduct.")

In this action, the plaintiff entered a settlement agreement that resolves "a dispute regarding various websites owned by [Rabco Leasing]" and the plaintiff's "right to various reimbursements." (Doc. 24-1)  The settlement agreement contains a release in which the plaintiff "forever discharge[s]" the defendants from any "known cause[] of action . . . arising from any matter . . . ."[6]  Even if the release is (implausibly) construed to cover any future conduct by the defendants, the release cannot discharge the defendants from liability for future, intentional conduct.  In the amended complaint, the plaintiff asserts a claim based on allegedly intentional conduct that occurred after the parties entered the settlement agreement.  Accordingly, the settlement agreement is no bar to the plaintiff's claim.  Additionally, the settlement agreement bars no claim by Hurricane Pass—to the extent that the complaint states a claim on behalf of Hurricane Pass—because Hurricane Pass is not a party to the settlement agreement.

### 2. Tortious Interference

To state a claim for tortious interference, a plaintiff must show "'(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the

---

[6] The settlement agreement states that the plaintiff releases the defendants from "all known causes of action, debts, or other liabilities and obligations, both contingent and fixed, which [the plaintiff] ever had, now ha[s], or which [the plaintiff] could have, arising from any matter, including attorneys' fees, costs, or any other available avenue of relief."  This provision appears heavily laden with ambiguity.

- 5 -

breach of the business relationship.'" Bortell v. White Mountains Ins. Group, Ltd., 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009) (quoting N. Am. Van Lines, Inc. v. Ferguson Transp., Inc., 639 So. 2d 32, 33 (Fla. 4th DCA 1994)). "This cause of action requires 'a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" 2 So. 3d at 1048 (quoting Ethan Allen Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 815 (Fla. 1994)). Bortell affirmed the dismissal of a claim alleging tortious interference. The plaintiff in Bortell failed to identify "any actual clients with whom [the plaintiff] had an agreement which in all likelihood would have been completed but for the defendants' interference." See also Sarkis v. Pafford Oil Co., 697 So. 2d 524, 526 (Fla. 1st DCA 1997) (affirming dismissal of an amended complaint in which the plaintiff failed to identify "the customers who were the subject of the alleged interference.").

In the amended complaint, the plaintiff alleges (1) that the plaintiff "had a valid contractual relationship with Constant Contact, Inc.[,] . . . a provider of Internet[-]based commercial e[-]mail services;" (2) that Rabon and Rabco Leasing knew that the plaintiff used the plaintiff's e-mail account with Constant Contact, Inc., to communicate with customers of both Hurricane Pass and another business that the plaintiff operated; (3) that, "by using well known cyber intrusion methods," Rabon and Rabco Leasing "commandeered" the e-mail account; and (4) Rabon and Rabco Leasing's "intentional contractual interference . . . significantly disrupted [the plaintiff's] business activities . . . and wrongfully obtain[ed] access to . . . trade secrets and confidential information." The plaintiff alleges no identifiable business relationship that suffered as a result of the

defendants' alleged interference. Accordingly, under <u>Bortell</u> and <u>Sarkis</u>, the allegations of the complaint fail to state a claim for tortious interference.

### 3. *Shareholder Derivative Action*

The plaintiff argues (Doc. 28) that the plaintiff sues primarily as a shareholder in behalf of Hurricane Pass. In order to bring a shareholder derivative action pursuant to Section 607.07401, Florida Statutes, a plaintiff must qualify as either (1) "a shareholder of the corporation when the transaction complained of occurred" or (2) a person who "became a shareholder through transfer by operation of law from one who was a shareholder at that time." Furthermore, the plaintiff must:

> allege with particularity the demand made to obtain action by the board of directors and that the demand was refused or ignored by the board of directors for a period of at least 90 days from the first demand, unless, prior to the expiration of 90 days, the person was notified in writing that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

Fla. Stat. § 607.07401(2); see <u>Orlando Orange Groves Co. v. Hale</u>, 107 Fla. 304, 315 (Fla. 1932) (finding that the failure to allege a demand is excused if the allegations "show facts which would justify a court in concluding that an effort for redress within the corporation[] would be unavailing."). Additionally, "[i]n a stockholder's derivative action, the corporation on whose behalf the action is brought is an indispensable party." <u>Daniels v. Vann</u>, 396 So.2d 723, 723 (Fla. 4th DCA 1981) (stating that "[t]he absence of the corporate defendant as at least a nominal party serves to divest the court of jurisdiction as to this aspect of the case."); <u>see</u> <u>also</u> <u>Alario v. Miller</u>, 354 So.2d 925, 927 (Fla. 2d DCA 1978) (finding that "in a derivative action the corporation on behalf of

- 7 -

which the stockholders sue is an indispensable party, and the court has no jurisdiction to adjudicate the rights of that corporation in its absence as a party . . . .").

In this action, the plaintiff possessed fifty percent of Hurricane Pass's shares at the time that the alleged harm occurred. Although the plaintiff fails to allege with particularity a demand upon the board of directors, the plaintiff alleges facts sufficient to show the futility of a demand. The plaintiff fails, however, to name Hurricane Pass as a party to this action. Accordingly, the plaintiff cannot maintain an action on behalf of Hurricane Pass.

### *III. The Counterclaim*

In addition to moving to dismiss the complaint, Rabco Leasing asserts a counterclaim in response to the complaint. The plaintiff moves to dismiss the counterclaim because the counterclaim is not asserted in an answer.[7] The plaintiff argues that the counterclaim is procedurally improper and subject to dismissal.

Rule 7, Federal Rules of Civil Procedure, defines a pleading as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." "Rule 7 explicitly excludes everything else from its definition of pleadings." Burns v. Lawther, 53 F.3d 1237, 1241 (11th Cir. 1995). Rule 13, which governs counterclaims, contemplates the assertion of either a permissive or a compulsory counterclaim in a "pleading." Accordingly, the federal rules permit a counterclaim only as part of an answer.

---

[7] Rabco Leasing has not answered the amended complaint.

Conclusion

Accordingly, (1) because the complaint fails to state a claim for tortious interference and (2) because the complaint fails to allege a shareholder derivative action, the defendants' motions to dismiss (Docs. 24, 26) are **GRANTED**. The complaint (Doc. 20) is **DISMISSED WITHOUT PREJUDICE** and the plaintiff is **GRANTED** leave to file a second amended complaint no later than **February 4, 2010**. The plaintiff's motion (Doc. 31) to dismiss Rabco Leasing's counterclaim is **GRANTED**, and the counterclaim (Doc. 30) is **DISMISSED WITHOUT PREJUDICE**.

ORDERED in Tampa, Florida, on January 21, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE