UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARTIN GWYNN,

    Plaintiff,

v.                                                                  CASE NO.: 8:09-cv-2093-T-23TGW

RABCO LEASING, INC., BRUCE D.
RABON, ALTON CATES, VIRGINIA
HUNTER and HURRICANE PASS
TRADERS, INC.,

    Defendants.
_____/

**<u>ORDER</u>**

The plaintiff sues "on his own behalf and on behalf of Hurricane Pass Traders, Inc.," for "fraudulent misrepresentation," trademark infringement, tortious interference with a business relationship, copyright infringement, and unjust enrichment. A January 21, 2010, order (Doc. 33) (1) grants the defendants' motions to dismiss (Docs. 24, 26) the amended complaint (Doc. 20), (2) grants the plaintiff's motion (Doc. 31) to dismiss the defendants' "counterclaim," and (3) permits the plaintiff to file a second amended complaint. The plaintiff files a second amended complaint and the defendants move (Docs. 40, 41) to dismiss.

<u>Allegations of the Second Amended Complaint</u>

In 1998, the plaintiff, the defendant Bruce Rabon ("Rabon"), and Kathy Zimmerman ("Zimmerman") formed the Hurricane Pass Traders general partnership (the "partnership"). The partnership sold t-shirts through a retail company known as William Short Clothiers ("WSC"), which employed both the plaintiff and Rabon. After

WSC closed WSC's retail outlets, WSC and the partnership collaborated to sell t-shirts and other retail items online. WSC, the plaintiff, and Rabon established a web site, http://www.hurricanepasstraders.com (the "web site").[1] In 2002, the plaintiff and Rabon formed a corporation under Florida law with the name Hurricane Pass Traders, Inc. ("Hurricane Pass"). The plaintiff and Rabon became Hurricane Pass's co-owners, initial board members, and principle officers. Hurricane Pass assumed the partnership's role in the online business with WSC. Contemporaneously, the defendant Rabco Leasing, Inc., ("Rabco Leasing") acquired WSC. For approximately four years thereafter, Hurricane Pass and Rabco Leasing collaborated in online sales, which generated an annual gross revenue of between $500,000 and a million dollars. The plaintiff earned a salary, which was paid by Rabco Leasing, plus ten percent of the profits generated from online sales.

In June, 2009, the relationship between the plaintiff and Rabon "became acrimonious, both professionally and personally." (Doc. 34, ¶ 42) On July, 21, 2009, Rabco Leasing terminated the plaintiff's employment. To settle a dispute over both the web site and money owed to the plaintiff, the plaintiff and Rabco Leasing entered a settlement agreement and general release. In August, 2009, the defendants "wrongfully commandeered" an e-mail account, which the plaintiff used to communicate with customers. In assuming control of the e-mail account, the defendants allegedly interfered with the relationship between the plaintiff and Bobby Chan, a customer of the plaintiff, "in order to acquire [Chan's] confidential e[-]mail distribution list and to prevent

---

[1] Around the same time, Rabon and the plaintiff purchased Zimmerman's interest in the partnership.

[the plaintiff] from conducting further [i]nternet e[-]mail marketing campaigns on behalf of [Chan]."

Subsequently, the plaintiff sought—pursuant to Section 607.1602, Florida Statutes[2]—to inspect Hurricane Pass's corporate records. The defendants Rabon, Alton Cates ("Cates"), and Virginia Hunter maintained Hurricane Pass's accounting records and provided some records in response to the plaintiff's demand. Approximately two weeks later, Rabco Leasing and Rabon filed against the plaintiff a criminal complaint alleging "theft and embezzlement of trade secrets." (Doc. 34, ¶ 51) After responding to the criminal complaint, the plaintiff again demanded to inspect Hurricane Pass's records. Upon the plaintiff's second inspection, the plaintiff discovered several "accounting anomalies" including (1) a "significant and material" discrepancy between the "accounts payable" and "accounts receivable" and (2) inexplicably missing inventory. The accounting "anomalies" resulted in an understatement of both Hurricane Pass and Rabco Leasing's tax burden and an undervaluation of Hurricane Pass's shares.

In moving to dismiss, the defendants argue (1) that Rule 1.110(g), Florida Rules of Civil Procedure, prohibits joinder of individual and derivative claims in a single action; (2) that estoppel and laches prevent the plaintiff from maintaining a derivative action; (3) that counts one, two, four, and five are subject to dismissal because the plaintiff failed to "adequately plead the requisite corporate demand;" (4) that counts one through five otherwise fail to state a claim; and (5) that the complaint fails to state a claim against

---

[2] Section 607.1602, Florida Statutes, grants the shareholder of a corporation the right to demand access, during regular business hours, to a corporation's books and records for inspection and copying.

- 3 -

Cates. In response, the plaintiff argues that the defendants' motions (1) are "premised on inapposite procedural authority," (2) prematurely assert affirmative defenses to the plaintiff's claims, and (3) demand pleading beyond the "notice pleading" standard of the Federal Rules of Civil Procedure.

### Discussion

#### 1. Joinder of Claims

Rule 18, Federal Rules of Civil Procedure, governs the joinder of claims and states that "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." The Federal Rules of Civil Procedure govern procedural matters in federal court. FED. R. CIV. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . ."); Rabon v. Automatic Fasteners, Inc., 672 F.2d 1231, 1238 n.14 (11th Cir. 1982) (noting that in a diversity case federal law governs procedural matters). Accordingly, Rule 1.110(g), Florida Rules of Civil Procedure, is inapplicable and provides no basis for dismissal.

#### 2. Estoppel & Laches

The defendants argue that both estoppel and laches bar the plaintiff from maintaining a shareholder derivative action. In response, the plaintiff argues that the defendants cannot assert an affirmative defense as a basis for dismissal under Rule 12(b), Federal Rules of Civil Procedure. Rule 12(b) states that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required," except for certain enumerated defenses, which a defendant may assert by

- 4 -

motion. Because estoppel is not listed among the defenses that Rule 12(b) permits a party to assert by motion, the plaintiff argues that estoppel belongs only in a responsive pleading. However, Rule 12(b) is not interpreted as narrowly as the plaintiff suggests; in some situations, an affirmative defense provides a basis for dismissal. If the complaint shows that an affirmative defense (such as qualified immunity, the statute of limitations, estoppel, or laches) bars relief, the complaint is subject to dismissal under Rule 12(b)(6). Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003); 5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 1357.

In this action, however, neither estoppel nor laches provide a basis for dismissal under Rule 12(b)(6). The events forming the basis for the tortious interference, fraudulent misrepresentation, and unjust enrichment claims occurred after the plaintiff's termination from Rabco Leasing in July, 2009. The plaintiff alleges that he became aware of the accounting "discrepancies" and misrepresentations on Hurricane Pass's tax returns only after demanding to inspect Hurricane Pass's books and records. Furthermore, nothing in the complaint shows that either estoppel or laches bar the trademark and copyright infringement claims.

*3. Adequacy of the Plaintiff's Demand*

The January 21, 2010, order (Doc. 33) finds that, although the plaintiff fails to allege with particularity a demand upon the board of directors, the plaintiff alleges facts sufficient to show the futility of a demand. The facts in the second amended complaint are the same as the facts reviewed in the January 21, 2010, order, and are sufficient to show the futility of a demand.

*4. Adequacy of Counts One through Five*

a. Count One: Fraudulent Misrepresentation

Rule 9(b), Federal Rules of Civil Procedure, states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A claim for fraud or mistake satisfies 9(b) if the complaint alleges:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)). As to count one, the plaintiff alleges (1) that the defendants misrepresented Hurricane Pass's accounts receivable, inventory, and other assets in both Hurricane Pass's books and records and tax returns; (2) that the misrepresentations occurred "over a period of years" and "after the end of each . . . tax year," (3) that the "net effect of these misrepresentations was to understate both [Hurricane Pass and Rabco Leasing's] tax burden and . . . to grossly undervalue [Hurricane Pass's] shares;" and (4) that the "net effect" of the misrepresentations "inured to the benefit of Rabco [Leasing]" as well as Rabon, who received a reduction in his "pass through" income as a result. Cates allegedly benefitted from the misrepresentations by "furthering his business relationship with [Rabco Leasing and Rabon]."

Additionally, the plaintiff alleges that the defendants benefitted from the misrepresentations because the misrepresentations "would result in an undervaluation of the corporation, if and when [the plaintiff] should decide the "cash out" of his fifty

- 6 -

percent . . . share." The plaintiff asserts that the Internal Revenue Service and the State of Florida will likely assess additional tax liability and fines against Hurricane Pass. In support of his claim, the plaintiff submits the reports provided to the plaintiff by two certified public accountants after the accountants reviewed Hurricane Pass's financial records. (Docs. 34-2 & 34-3) Each report shows both the tax years during which Hurricane Pass's tax returns contained "discrepancies" and the specific nature of the "discrepancies." Accordingly, the plaintiff alleges with sufficient particularity the facts underlying count one. See 256 F.3d at 1202 ("The application of Rule 9(b) . . . 'must not abrogate the concept of notice pleading.'") (quoting Durham v. Bus. Mgmt. Assoc., 847 F.2d 1505, 1511 (11th Cir.1988)).

Notwithstanding the sufficiency of the allegations in count one, Cates argues that the economic loss rule bars a tort claim against him. Specifically, Cates asserts that, because he was in contractual privity with Hurricane Pass, Cates is susceptible only to a breach of contract claim. In support of his argument, Cates cites Indemnity Ins. Co. of N. Am. v. American Aviation, Inc., 891 So. 2d 532, 536-37 (Fla. 2004), and notes the existence of an exception for professional malpractice, which the plaintiff fails to allege. However, Cates fails to mention another exception to the economic loss rule explained in a footnote:

> Intentional tort claims such as fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof of intent generally remain viable either in the products liability context or if the parties are in privity of contract. As noted by one commentator, a rule barring recovery for economic loss "is not an escape hatch from intentional commercial torts."

891 So.2d 532, 543 n.3. In count one, the plaintiff alleges fraudulent misrepresentation, which is not barred by the economic loss rule as described in American Aviation. Accordingly, Cates' argument for dismissal is unpersuasive.

- 7 -

### b. Count Two: Trademark Infringement

In moving to dismiss count two, the defendants simply state that the plaintiff's trademark infringement claim fails because the plaintiff is not the owner of a valid trademark—rather, Hurricane Pass owns the trademark. However, the plaintiff brings the claim as a shareholder derivative claim on behalf of Hurricane Pass. Because the plaintiff (1) alleges that the plaintiff possessed fifty percent of Hurricane Pass's shares at the time that the alleged harm occurred, (2) provides facts sufficient to show the futility of a demand, and (3) names Hurricane Pass as a nominal party to this action, the plaintiff may assert a claim for trademark infringement on behalf of Hurricane Pass.

### c. Count Three: Tortious Interference

To state a claim for tortious interference, a plaintiff must show "'(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship.'" Bortell v. White Mountains Ins. Group, Ltd., 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009) (quoting N. Am. Van Lines, Inc. v. Ferguson Transp., Inc., 639 So. 2d 32, 33 (Fla. 4th DCA 1994)). "This cause of action requires 'a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" 2 So. 3d at 1048 (quoting Ethan Allen Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 815 (Fla. 1994)); see also Sarkis v. Pafford Oil Co., 697 So. 2d 524, 526 (Fla. 1st DCA 1997) (affirming dismissal of an amended complaint in which the plaintiff failed to identify "the customers who were the subject of the alleged interference.").

In the amended complaint, the plaintiff alleges (1) that the plaintiff "had a valid contractual relationship with Constant Contact, Inc.[,] . . . a provider of Internet[-]based commercial e[-]mail services;" (2) that Rabon and Rabco Leasing knew that the plaintiff used the plaintiff's e-mail account with Constant Contact, Inc., to communicate with customers of both Hurricane Pass and another business that the plaintiff operated; (3) that, "by using well known cyber intrusion methods," Rabon and Rabco Leasing "commandeered" the e-mail account; (4) that, in "commandeering" the e-mail account, the defendants intentionally interfered in the plaintiff's relationship with Bobby Chan, which relationship the defendants were aware of; and (5) Rabon and Rabco Leasing's "intentional contractual interference . . . significantly disrupted [the plaintiff's] business activities . . . and wrongfully [provided the defendants] access to . . . trade secrets and confidential information." Accordingly, the defendants' argument that count three "fails to meet the basic pleading requirements" lacks merit.

### d. Count Four: Copyright Infringement

In arguing for dismissal of count four, the defendants state:

> [w]hile it is not clear whether [Hurricane Pass] holds a valid copyright registration, given that the website has been licensed to Rabco [Leasing] and its predecessor for over ten years, it is clear that [p]laintiff cannot retroactively sue for copyright infringement. Even if that were not the case, [p]laintiff does not explain how or where [d]efendants have "copied" the protected site.

(Doc. 40) Although not entirely "clear" what the defendants mean by "retroactively sue for copyright infringement," the defendants appear to argue that no copyright protection exists until the copyright is secured through a copyright registration. Title 17, United States Code, Section 408, states "clearly" that "registration is not a condition of copyright protection." Compare 17 U.S.C. § 411 (stating that registration is a

prerequisite to suing for copyright infringement).  To state a claim for copyright infringement, the plaintiff must show "(1) that [the plaintiff] owns a valid copyright . . . and (2) that [the defendant] copied 'constituent elements of the copyrighted work that are original.'"  Calhoun v. Lillenas Publishing, 298 F.3d 1228, 1232 (11th Cir. 2002) (quoting Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).  Copying occurs when either a person or an entity exercises without authorization any of the copyright owner's exclusive rights.  17 U.S.C. § 501; Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1284 n.2 (10th Cir. 1996) (noting that "'copying' is regularly used as a shorthand to refer to the infringement of a copyright holder's exclusive rights under a copyright.").

In count four, the plaintiff alleges that Hurricane Pass is the owner of a copyright, which the defendants Rabco Leasing and Rabon "unlawfully" reproduced, distributed, and displayed.  The defendants "use [Hurricane Pass's] [c]opyrighted [w]orks to conduct business on the internet" even though Hurricane Pass never "conveyed a transfer of copyright ownership from [Hurricane Pass] to Rabco [Leasing]."  In support of the claim, the plaintiff provides both a copyright application and registration certificate.  Accordingly, the plaintiff sufficiently states a claim for copyright infringement.

### e. Count Five:  Unjust Enrichment

To state a claim for unjust enrichment, the plaintiff must show (1) that "the plaintiff conferred a benefit on the defendant, who has knowledge of the benefit," (2) that "the defendant accepts and retains the conferred benefit," and (3) that, "under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it."  Duncan v. Kasim, Inc., 810 So.2d 968, 971 (Fla. 5th DCA 2002).  In this action, the plaintiff alleges that Rabco Leasing and Rabon (1) appropriated Hurricane

Pass's intellectual property without compensating Hurricane Pass and (2) obtained "millions of dollars" in internet sales generated by the use of Hurricane Pass's intellectual property. As a result, the plaintiff argues that "it would be grossly inequitable to allow Rabco [Leasing] and Rabon . . . to generate significant revenue . . . without any compensation to [Hurricane Pass]." Rabco Leasing and Rabon allegedly use Hurricane Pass's intellectual property (without permission from Hurricane Pass) to conduct business. The allegations are sufficient to state a claim for unjust enrichment against Rabco Leasing and Rabon.

## Conclusion

Accordingly, because each of counts one through five of the second amended complaint states a claim against the defendants, the defendants' motions to dismiss (Docs. 40, 41) are **DENIED**.

ORDERED in Tampa, Florida, on April 2, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE